**REVERSE and REMAND; Opinion Filed February 10, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01349-CR

**MARK J. BOWMAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 5**
**Collin County, Texas**
**Trial Court Cause No. 005-87830-2012**

## OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Lang

Appellant Mark J. Bowman was charged by information with driving while intoxicated. Following the trial court's denial of his pretrial motion to suppress evidence of his blood alcohol content, appellant waived his right to a jury trial and pleaded guilty. The trial court adjudged appellant guilty and, in accordance with a negotiated plea agreement, assessed punishment at 180 days' confinement, suspended for two years, and a fine of $1,000.

In three issues on appeal, appellant challenges the trial court's denial of his motion to suppress. Specifically, appellant contends (1) the trial court erred by concluding that based on the totality of the circumstances, exigency was met and the warrantless mandatory blood draw performed on appellant was constitutional; (2) the taking of appellant's blood without a warrant under Chapter 724 of the Texas Transportation Code was a violation of appellant's Fourth Amendment rights and the results of the blood test should be excluded at trial, *see* TEX. TRANSP.

CODE ANN. §§ 724.001–.064 (West 2011 & Supp. 2014); and (3) the decision in *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), "should be applied retroactively to the instant matter."

We decide in favor of appellant on his three issues. We reverse the trial court's judgment and remand this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Prior to the date this case was set for trial, appellant filed a "Motion to Suppress BAC Results From a 'Mandatory Blood Specimen' Illegally Obtained Under § 724.012." In that motion, appellant stated in part "[i]t is not in dispute that the blood evidence seized in this case was done so pursuant to §724.012 of the Texas Transportation Code and not pursuant to a search warrant." Further, appellant stated in part,

> 8. In this case, [appellant] was arrested after a "routine DWI Investigation." Officer Hoya of the McKinney Police Department conducted his investigation and then placed [appellant] into custody for DWI. Another officer handled the impounding of the vehicle and the completion of the accident report to allow Officer Hoya to focus on the arrest. There is no evidence that there was any delay or emergency in this case that would have prevented Officer Hoya from obtaining a blood search warrant.
> . . . .
> 10. The United States Supreme Court, in its decision in *McNeely*, has in essence ruled that §724.012 of the Texas Transportation Code is unconstitutional based on the Fourth Amendment of the U.S. Constitution. Since this decision deals with a constitutional right of a defendant, **it is applicable to any cases that are still pending, even if they occurred prior to the Court's ruling.**
>
> 11. Although Officer Hoya will be able to defend against any civil liability regarding the illegal blood draw that occurred in this case due to his reliance on then current state law, the blood evidence must be suppressed as it was obtained in violation of the United States Constitution.

(emphasis original).

At the pretrial hearing on appellant's motion to suppress, Officer Dustin Hoya of the McKinney Police Department testified that at approximately 3:45 a.m. on June 23, 2012, he was "working patrol." While driving northbound on Lake Forest, he saw a Volkswagen "off the street." Hoya stated the Volkswagen "had heavy front-end damage where it hit a telephone pole"

–2–

and "[t]here was still smoke and dust looming over the vehicle." He pulled over behind the Volkswagen and got out of his vehicle.

Hoya stated he saw appellant standing at the passenger door of the Volkswagen. There was a female in the passenger seat, still buckled in. According to Hoya, the passenger was "crying and kind of clench [sic] over, leaning forward grabbing toward her side." Hoya testified it was clear to him appellant had been driving the Volkswagen. Hoya stated he asked appellant what happened and appellant said he "must have dozed off."

Hoya testified his first priority was "[i]njuries." He stated the passenger told him she was in pain and he was "afraid that [the passenger] had some kind of a severe internal injury." He called for an ambulance based on his observations. He testified appellant "didn't say at first that he was injured," but later chose to be transported to the hospital by paramedics after complaining of head pain.

Hoya stated he suspected "this perhaps was a DWI crash" based on appellant's appearance and a "strong odor of alcohol coming from his breath." Hoya did not conduct standardized field sobriety tests at the scene because he "wanted to make sure everyone was taken care of" before doing an investigation. He testified backup officers responded to the scene, but were "a little delayed getting there" because "dispatch" directed them to the wrong location.

Hoya stated that although persons injured in McKinney are usually transported to Medical Center of McKinney, appellant and the passenger were transported to Centennial Medical Center of Frisco, which was approximately a 25-minute drive. Hoya accompanied the ambulance to the hospital. At the hospital, Hoya placed appellant under arrest and read him "the statutory warning." According to Hoya, appellant refused to give a specimen of his blood, so Hoya "had the nurse take a mandatory specimen from him." Hoya testified there were "two authorizations" for that blood draw pursuant to the Texas Transportation Code: (1) "[w]e had a

subject that was injured, transported to the hospital" and (2) appellant had "previous DWI convictions." Further, Hoya stated, "in this case, I initially charged with intox assault so I was doing it based off of that." Hoya did not attempt to obtain a search warrant "because of the Transportation Code statute."

Hoya testified that if he had attempted to get a "blood search warrant," it would have taken "maybe an hour to an hour and a half to get a search warrant plus a little additional driving time since Centennial is out of the way." He stated there was no "on-call judge" available that night and "we only had available our municipal judge."[1] According to Hoya,

> [T]he way it works I've got a thumb drive with my blood warrant search form on it. It takes me about 20 to 30 minutes to type that up and I got to literally drive the search warrant—print the search warrant off and drive the search warrant to the judge's house and drive the search warrant back to the jail—or back to the hospital. I'm sorry. I would also have wait for a cover officer to come sit at the hospital with the defendant while I transport the search warrant.

Hoya stated the hours of the shift he was working were from 5 p.m. to 5 a.m. and the officers that were "on shift" would therefore be "getting off" at 5 a.m. He testified the shift change would have "complicated" obtaining a warrant as follows: "I guess a nice way to say it is officers are scarce towards the end of shift. . . . When there's shift change there's less officers on the street because they're in briefing, so it would have taken additional time for me to get an officer out to Centennial."

According to Hoya, the "exigency factors" he considered when making the decision to obtain a mandatory blood draw were (1) "[j]ust the time it would take to get the blood warrant would have been quite sometime [sic]" and (2) "plus, I had [the passenger] who I believe was seriously injured." He stated this was not a "routine DWI investigation."

---

[1] The record shows the municipal judge available on the night in question was "Judge Dickey."

On cross-examination, Hoya testified (1) the scene of the accident described above was approximately three miles from the McKinney police station; (2) the dust looming over the vehicle when he came upon the scene indicated the accident had just happened; (3) he called for backup at the same time he called for paramedics; (4) he spoke with the passenger from 3:49 a.m. to 3:54 a.m.; (5) he did not need to revive the passenger and she was not visibly bleeding externally; (6) at "3:55 and 40 seconds," he "confirmed the medics were coming on the radio" and "had the situation under control at that point"; (7) two backup officers, Officer Castillo and Officer Henriques, arrived at 3:56 a.m.; (8) the paramedics arrived at 3:58 a.m.; (9) at 3:59 a.m., he stated to Henriques that if the paramedics "transport" the passenger, it will be a "mandatory draw"; (10) at 4:11 a.m., he and Henriques searched in the car for the keys to the vehicle and the passenger's shoes; (11) he had time to "talk to" and "make jokes with" the backup officers at the scene; (12) he followed the paramedics to the hospital at 4:17 a.m.; (13) although neither Castillo nor Henriques accompanied him to the hospital, Castillo "could have gone to the hospital"; (14) it takes "about an hour" to get a warrant following a refusal; (15) he can prepare warrants at the police station or at the hospital; and (16) the "standard time" it takes to pull someone over and conduct a DWI investigation is about thirty minutes. Additionally, Hoya testified as follows:

> Q. Let's see. You can also call a colleague to execute the warrant for you at the hospital once the judge signs it, correct?
>
> A. That's correct.
>
> Q. Okay. So, basically, once you get the warrant executed you can call a colleague that's standing by and you can say, hey, look, I got warrant in hand. I'm on my way. You can go ahead and draw their blood, correct?
>
> A. I can but I don't do that.
>
> Q. Okay. But you could?
>
> A. It's a possibility, but I don't.

On redirect examination, Hoya testified this could be characterized as a "standard DWI time wise," but "other than that fact, this was not your run-of-the-mill DWI" because both occupants of the vehicle were transported to the hospital. Additionally, he stated that during the time the "jokes" and conversation described by defense counsel were occurring, (1) he was "idle" because he was waiting for the ambulance to leave so he could follow, (2) Henriques was gathering information because she was "working the crash report," and (3) Castillo was "filling out a tow slip and inventory for the vehicle."

An audio-visual recording of the events that occurred at the accident scene described above was admitted into evidence and played in open court.

During closing argument, counsel for appellant argued in part, (1) "[a]bsent a true emergency that actually fits under exigent circumstances exception to the Fourth Amendment of the Constitution, an officer cannot legally take a blood sample from a defendant unless he has consent or unless he has a warrant under [*McNeely*]" and (2) "the natural dissipation of alcohol in the blood system is not by itself an exigent circumstance." Further, counsel for appellant stated in part,

> In this case, the State—the State has not met is burden by clear and convincing evidence to show that exigent circumstances exist. Let's look at time line in the case. At 3:46 Officer Hoya comes on the scene of the accident. He called for medics. He called for backup. And he begins to conduct a DWI and accident investigation at that time. . . .
> And, basically, Officer Hoya can tell from the dust of the accident that the accident has just occurred. . . .
> . . . And [the passenger], her injuries are not the type of injuries that would require Officer Hoya's constant attention. . . . He lets her sit there and he waits for the medics to arrive.
> After about ten minutes Officer Henriques shows up, his backup arrives. So he's got Officer Henriques there and Officer Castillo soon shortly follows.
> . . . .
> At 12 minutes after the accident the medics arrive and they start to do their work. . . .
> . . . .
> At 4:17, 30 minutes after the accident, both [appellant] and the passenger are transported. And in the ten minutes prior to that you hear a pretty relaxed

atmosphere on the scene. They're going through the car. Officer Hoya is looking for keys. They're cracking jokes . . . .

There's no sign of anything being emergent [sic] at the scene. No exigent circumstances at the scene, Judge. The—Officer Henriques stays at the crash. She's working the accident. At this point—and Officer Hoya knows it on direct examination—he's got the ability of two officers now that Officer Castillo could go with him to the hospital.

. . . .

Now, as you can tell from the testimony McKinney PD has a streamlined process to go and get a blood warrant. Officer Hoya admitted he can draft the warrant at the police station, which was 2.8 miles away from the accident scene. If he had Officer Castillo go to the hospital, he could have easily gone to the police station to go get the warrant drafted and go see Judge Dickey. . . . He admitted in his testimony he could get a blood warrant, he has in the past within an hour.

. . . .

He could have called Officer Castillo at the hospital and he could have executed the warrant over the phone if he needed to. He said it was not normally his practice, but he said he could have done it if time was an issue if the hospital was, in fact, that far away.

The State has—in summary the State has failed to show by clear and convincing evidence, Your Honor, that Officer Hoya faced an emergency or an unusual delay on the night in question and that he would have had an unusual delay securing a warrant in this case. Therefore, the search violates the Fourth Amendment of the Constitution.

The State argued in part that "[p]erhaps time-wise this was conducted roadside in the same manner and means as a routine DWI, but fact-wise you have nothing of the sort." Specifically, the State asserted: (1) the damaged vehicle had "collided with heavy impact"; (2) appellant told Hoya "his head is hurt"; (3) the passenger was "doubled over and holding her side" and told Hoya she was "in a lot of pain"; (4) the injured individuals "weren't transported to the regular hospital that McKinney operates out of"; and (5) getting a warrant would have required going to the municipal judge's home. Further, the State argued in part,

Now, defense counsel makes the argument that if Officer Castillo stayed at that hospital he could have gone and done that while Officer Castillo was at the hospital. Again, you have not a routine DWI because your [sic] right by a shift change. Had he done that and left Officer Castillo at the hospital and then Officer Hoya go and do all of the blood warrant duties that he had to do, you would have two officers that are staying over the shift change. You would have to have another officer that comes on at five a.m. come and replace Officer Castillo so

that he could go home and then you have Officer Hoya coming back to the hospital.

Keep in mind, Judge, that there was no reason for him to even think through that because the Transportation Code of our state provides that everything that he did was appropriate.

. . . Not once have you heard this officer say that he was concerned about losing time or losing evidence. You never once heard [Hoya] say that he was afraid that he was losing that blood evidence based on time or dissipation or metabolism. The only things that have come out of his mouth are the exigency factors, which were as he testified, the crash, the fact that he [sic] had injuries, and the fact that it would have taken over an hour to get the blood warrant.

. . . .

. . . And under the totality of these circumstances, when you look at the facts that you had, a crash, two injured parties, the fact that they were transported to a different hospital, that they were operating with a judge who does not allow fax blood warrants, that you are operating with a shift change coming up within the hour, and that it would have taken over an hour to get the blood warrant and bring it back to the hospital, that the behavior and determination that the warrantless blood draw under our Transportation Code was perfectly reasonable and it falls exactly into the exigency factors that the Supreme Court says that's what we're looking for when we think it's okay to take a blood draw without getting a warrant.

Following the parties' closing arguments, the trial judge stated, "The motion to suppress is denied." Additionally, upon appellant's request, the trial court issued findings of fact and conclusions of law.[2] The trial court's conclusions of law provided alternative grounds for

---

[2] In its findings of fact and conclusions of law, the trial court stated as follows:

Findings of Fact

(a) Officer Dustin Hoya is employed with the City of McKinney Police Department.

(b) On June 23, 2012 at approximately 3:46 am, Officer Hoya was on patrol and encountered a vehicle that had left the roadway and struck a telephone pole that stood about 20 feet from the roadway.

(c) Officer Hoya saw multiple signs of intoxication when speaking to Mr. Bowman (hereinafter "Defendant"), including a strong odor of alcohol, red and watery eyes, and slurred speech.

(d) The Defendant complained of head pain and blood coming from his head due to striking the windshield.

(e) Officer Hoya identified the front passenger in the vehicle . . . (hereinafter "Passenger") and observed that she appeared to be in a lot of pain.

(f) The Passenger complained that her hip was hurting a great deal and furthermore, due to the way she was doubled over and holding her abdomen, Officer Hoya reasonably believed she may have internal injuries.

(g) Both the Passenger and the Defendant were transported to the hospital by McKinney emergency medical personnel.

(h) Officer Hoya testified that usually subjects are taken to the Medical Center of McKinney, but in this case the medics transported the Defendant and Passenger to Centennial Medical Center in Frisco.

(i) The only judge on call that morning was Judge Dickey, who does not allow faxed warrants.

–8–

denying the motion to suppress based on exigent circumstances and transportation code section 724.012.

Subsequent to the trial court's denial of his motion to suppress, appellant signed a waiver of his rights and pleaded guilty. In addition to the judgment described above, the trial court signed a certification of appellant's right to appeal that stated in part that this case "is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right of appeal."

Appellant filed a timely motion for new trial in which he stated in part "[t]he verdict in this cause is contrary to the law and the evidence." That motion was overruled by operation of law. This appeal timely followed.

---

(j) The only method to get a blood warrant signed by the on-call judge would have been to drive to Judge Dickey's home, get the warrant signed, and return to the hospital.

(k) A shift change would have occurred within the time that Officer Hoya would have been able to obtain a blood warrant, requiring additional officers to stay with the suspect at the hospital.

(1) A mandatory blood draw was performed at Officer Hoya's request at 5:09 am at Centennial Medical Center of Frisco under Texas Transportation Code §724.012, specifically under §724.012(b)(1)(C).

(m) A dash-cam video (hereinafter "State's Exhibit 1") of the roadside interaction was introduced and published up to the point of transport.

(n) State's Exhibit 1 accurately reflects the events that took place on June 23, 2012.

(o) Officer Hoya was a credible witness.

Conclusions of Law

(a) Officer Hoya had probable cause to arrest the Defendant for Driving While Intoxicated based on the evidence he observed during his DWI investigation, the Defendant's admission to driving, and statements from the Passenger.

(b) Officer Hoya reasonably believed that an individual other than the Defendant had suffered bodily injury and had been transported to a hospital for medical treatment.

(c) At the time of the offense, a mandatory blood draw under Texas Transportation Code §724.012 was not in conflict with case law.

(d) *Missouri v. McNeely*, 133 S. Ct. 1552, 185 L. Ed 2d 696 (2013), decided by the Supreme Court on April 17, 2013, held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant."

(e) *Missouri v. McNeely* held that "exigency in this context must be determined case by case based on the totality of the circumstances."

(f) Based on the totality of the circumstances of this case, exigency was met and therefore the mandatory blood draw performed on the Defendant was appropriate.

(g) Officer Hoya had a good faith basis to request a mandatory blood draw pursuant to Texas Transportation Code §724.012.

(h) The blood in this case is therefore not suppressed.

## II. DENIAL OF APPELLANT'S MOTION TO SUPPRESS

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Lloyd v. State*, No. 05-13-01004-CR, 2014 WL 7249747, at *3 (Tex. App.—Dallas Dec. 22, 2014, no pet.). The trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Kerwick*, 393 S.W.3d at 273; *Lloyd*, 2014 WL 7249747, at *3. But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Kerwick*, 393 S.W.3d at 273; *Lloyd*, 2014 WL 7249747, at *3. The trial court's ruling must be upheld if it is correct under any theory of law applicable to the case. *See*, *e.g.*, *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

### B. Applicable Law

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue" unless certain requirements are met. U.S. CONST. AMEND. IV; *see also* TEX. CONST. art. I, § 9. "In general, to comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances." *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *8 (Tex. Crim. App. Nov. 26, 2014).

The exceptions to the rule that a search must rest upon a search warrant "have been jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 499 (1958). Among those

exceptions are "voluntary consent to search" and "search under exigent circumstances." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). "[E]xigent circumstances are those 'exigencies of the situation' that 'make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" *Lloyd*, 2014 WL 7249747, at *3 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). "These include, for example, the threat of imminent removal or destruction of evidence, threat to human life, rendering emergency assistance to injured occupants, or hot pursuit of a fleeing suspect." *Id.*; *see Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

"A defendant who alleges a Fourth Amendment violation has the burden of producing evidence that rebuts the presumption of proper police conduct." *State v. Robinson*, 334 S.W.3d 776, 778–79 (Tex. Crim. App. 2011). He may carry this burden by establishing that a search or seizure occurred without a warrant. *See Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable. *See Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492; *see also McGee*, 105 S.W.3d at 613 (State demonstrates reasonableness by showing one of statutory exceptions to warrant requirement has been met).

Under section 724.011(a) of the Texas Transportation Code, "[i]f a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, . . . the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance." TEX. TRANSP. CODE ANN. § 724.011(a). Additionally, section 724.012(b)(1)(C) of the transportation code provides in part,

–11–

(b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:

(1) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:
. . . .
(C) an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment.

*Id*. § 724.012(b)(1)(C); *see also* TEX. PENAL CODE ANN. § 49.04(a) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.").

In *Schmerber v. California*, the United States Supreme Court considered for the first time whether a law enforcement officer may lawfully compel an individual suspected of driving while intoxicated to submit to blood testing. *See* 384 U.S. 757, 767–69 (1966). In that case, the defendant, Armando Schmerber, lost control of his vehicle and struck a tree. *Id*. at 758. The police officer who arrived at the scene shortly after the accident smelled liquor on Schmerber's breath. *Id*. at 769. Schmerber was transported to a hospital for treatment of his injuries and, within two hours after the accident, the same officer arrested Schmerber at the hospital. *Id.* At the direction of the police officer and over Schmerber's objection, a warrantless blood draw was then performed on Schmerber by a physician at the hospital. *Id*. at 758. In the trial court, Schmerber's objection to the admissibility of evidence respecting the percentage of alcohol in his blood was overruled and he was convicted of driving while intoxicated. *Id*. at 759. On appeal, he asserted various constitutional violations pertaining to the blood draw. *Id*.

The Court stated that the need to secure a warrant from a neutral and detached magistrate before permitting a law enforcement officer to "invade another's body in search of evidence of guilt" is "indisputable and great." *Id*. at 770. Nevertheless, the Court upheld the warrantless,

–12–

compelled search of Schmerber's blood as constitutionally permissible on the basis of exigent circumstances. *Id*. at 770–72. In reaching its conclusion, the Court stated in part,

> The officer in the present case . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened "the destruction of evidence." We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was appropriate incident to petitioner's arrest.

*Id*. at 770–71 (citation omitted).

More than four decades later, the Supreme Court addressed the question of whether the natural metabolization of alcohol in the bloodstream presented a per se exigency that, taken on its own, would suffice to justify an exception to the warrant requirement for blood testing in drunk-driving cases. *McNeely*, 133 S.Ct. at 1556. The Court stated in part,

> Our cases have held that a warrantless search of the person is reasonable only if it falls within a recognized exception. That principle applies to the type of search at issue in this case, which involved a compelled physical intrusion beneath McNeely's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation. Such an invasion of bodily integrity implicates an individual's "most personal and deep-rooted expectations of privacy."

*Id*. at 1558 (citations omitted).

After reaffirming its holding in *Schmerber*, which it emphasized was based on the totality of the circumstances presented in that case, the *McNeely* court rejected the State's proposal of a per se rule. *Id*. at 1560. The Court observed that "because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of [blood test] results." *Id*. at 1561. However, the Court stated, "[i]n contrast to, for example, circumstances in which the suspect has control over easily disposable

–13–

evidence, BAC evidence from a drunk-driving suspect naturally dissipates over time in a gradual and relatively predictable manner." *Id*. The Court continued,

> Moreover, because a police officer must typically transport a drunk-driving suspect to a medical facility and obtain the assistance of someone with appropriate medical training before conducting a blood test, some delay between the time of the arrest or accident and the time of the test is inevitable regardless of whether police officers are required to obtain a warrant. . . . This reality undermines the force of the State's contention . . . that we should recognize a categorical exception to the warrant requirement because BAC evidence "is actively being destroyed with every minute that passes." Consider, for example, a situation in which the warrant process will not significantly increase the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer. In such a circumstance, there would be no plausible justification for an exception to the warrant requirement.
>     The State's proposed per se rule also fails to account for advances in the 47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple. . . . Well over a majority of States allow police officers or prosecutors to apply for search warrants remotely through various means, including telephonic or radio communication, electronic communication such as e-mail, and video conferencing. And in addition to technology-based developments, jurisdictions have found other ways to streamline the warrant process, such as by using standard-form warrant applications for drunk-driving investigations.

*Id*. at 1561–62 (citations omitted).

The Court concluded, (1) "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, it does not do so categorically" and (2) "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id*. at 1563. According to the Court, "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id*. at 1561.

Additionally, the Court stated in part,

[T]he fact that a particular drunk-driving stop is "routine" in the sense that it does not involve "'special facts,'" such as the need for the police to attend to a car accident, does not mean a warrant is required. Other factors present in an ordinary traffic stop, such as the procedures in place for obtaining a warrant or the availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search. The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case.

*Id*. at 1568 (citation omitted).[3]

More recently, while the case before us was pending on appeal, the Texas court of criminal appeals rejected arguments by the State of Texas that a warrantless blood draw conducted pursuant to the provisions of the Texas Transportation Code over the accused's objection can, without more, (1) be upheld under a "general Fourth Amendment balancing test" or (2) fall under one of several asserted exceptions to the warrant requirement, including a consent exception based on "implied consent." *Villarreal*, 2014 WL 6734178, at *20. Specifically, the court of criminal appeals concluded (1) "the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement" and (2) "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *Id*. at *20–21.

### C. Application of Law to Facts

1. Retroactive Application of *McNeely*

---

[3] The Supreme Court did not specifically address whether the particular facts of *McNeely* showed exigent circumstances. *See id*. The Court stated, "In petitioning for certiorari to this Court, the State . . . did not separately contend that the warrantless blood test was reasonable regardless of whether the natural dissipation of alcohol in a suspect's blood categorically justifies dispensing with the warrant requirement." *Id*. Further, the Court stated, "Because this case was argued on the broad proposition that drunk-driving cases present a per se exigency, the arguments and the record do not provide the Court with an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant." *Id*.

–15–

We begin with appellant's third issue, in which he contends *McNeely* "should be applied retroactively to the instant matter."  According to appellant, "[i]t is well-established law that a decision of the Supreme Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered."  The State asserts in a footnote in its brief on appeal, "Because this case is not yet final because it is pending on appeal, the State does not contest that the holding in [*McNeely*] is properly applied to the facts of this case."

The opinion in *McNeely* is dated April 17, 2013, which is subsequent to appellant's notice of appeal in this case.  "New rules governing the conduct of criminal prosecutions apply retroactively to all cases pending on direct appeal or not yet final at the time the new rule is announced regardless of whether they constitute a clear break from past precedent."  *Cole v. State*, No. 06-13-00179-CR, 2014 WL 7183859, at *5 (Tex. App.—Texarkana Dec. 18, 2014, no pet.) (citing *Griffith v. Kentucky*, 479 U.S. 314, 326–28 (1987); *McClintock v. State*, 444 S.W.3d 15 (Tex. Crim. App. 2014); *Steadman v. State*, 360 S.W.3d 499, 504 n.13 (Tex. Crim. App. 2012)).  We conclude the law to be applied in this case includes the Supreme Court's opinion in *McNeely*.  *See id.*

We decide appellant's third issue in his favor.

### 2. Exigent Circumstances

Next, we address appellant's first issue, in which he contends the trial court erred "in holding that based on the totality of the circumstances, exigency was met and the warrantless mandatory blood draw performed on [him] was constitutional."  Appellant contends (1) this Court "is hard-pressed to consider a [warrant application] process that takes about an hour from start to finish an exigent circumstance"; (2) "[t]he accident scene in the instant matter should not be considered exigent when it was worked in the same time span as a normal DWI

investigation"; (3) "[t]he shift change is a moot point considering Officer Hoya could have had Officer Castillo follow the [a]ppellant to the hospital as he went to obtain a warrant while Officer Henriques stayed at the crash scene"; and (4) "based on the factual record in this matter, if a warrant had been obtained there would have been very little difference in the time of [a]ppellant's blood draw." Further, according to appellant, "[t]he exigent concerns Officer Hoya cited in retrospect at the suppression hearing specifically, 1) the injured passenger; and 2) the time required to get a blood draw warrant are simply not exigent factors or special facts in light of the personnel and technological resources that were available to Officer Hoya that night."

As part of his argument on appeal, appellant describes a hypothetical timeline that he contends demonstrates the amount of time it would have taken Hoya to obtain a warrant based on the facts in the record. The scenario described in that hypothetical timeline includes Castillo (1) accompanying appellant to the hospital at 4:17 a.m. while Hoya "departs to obtain a blood draw warrant" rather than going to the hospital and (2) remaining at the hospital until Hoya informs him by phone one hour later, at 5:17 a.m., that Hoya "has a warrant in hand and to go ahead and take [a]ppellant's blood." According to appellant, the blood draw under that hypothetical timeline would occur at 5:17 a.m., eight minutes later than the actual 5:09 a.m. blood draw in this case.

The State responds in part that the trial court "properly found that an exigency was met by the totality of the circumstances of this case" because "facts establishing an exigency were present, unlike the absence of such special facts in *McNeely*, but more similar to the special facts in *Schmerber*." Specifically, the State asserts (1) this case involved a vehicle crash that occurred prior to officers' arrival on the scene and resulted in injuries to the occupants; (2) "the backup was delayed getting to the scene"; and (3) Judge Dickey, who was the only judge available, did

–17–

not permit officers to fax blood warrant affidavits.[4] Further, the State contends "the facts of this case simply would not allow for [a]ppellant's hypothetical scenario" because (1) "[a]ppellant was not placed under arrest for driving while intoxicated on the roadside," but rather was arrested at the hospital, "thereby preventing Officer Hoya from being able to head straight to Judge Dickey's home from the scene"; (2) "Officer Hoya would not have had the blood warrant affidavit typed, printed, and prepared for signature on the roadside in order to be able to head straight to Judge Dickey's home"; (3) "[d]espite [a]ppellant's suggestion that Officer Hoya could have called the backup officer keeping watch over [a]ppellant at the hospital to execute the blood draw once Officer Hoya had the warrant signed in-hand, Officer Hoya testified that this is a practice he does not personally do and thus is not supported by the record"; (4) appellant's timeline "does not include any impact that the early morning shift change could have had on the temporal comparison, given that the hospital was approximately 25 minutes from the crash scene or the McKinney Police Department"; and (5) there is nothing in the record to indicate Castillo "could have gone to the hospital" and "therefore [a]ppellant assumes facts not in evidence and facts which cannot even be reasonably inferred from the evidence." Additionally, the State argues "[t]he Texas court of appeals decisions addressing warrantless blood draws under Section 724.012 following *McNeely* have generally not required exclusion of a suspect's mandatory blood sample, and the single court that did so is distinguishable from [a]ppellant's case."[5]

---

[4] Additionally, the State asserts in its brief in this Court,

> Appellant told Officer Hoya on the roadside that he was coming from the Mason Bar in downtown Dallas after celebrating a friend's birthday. There was no mention of open containers found in the car on the video admitted in State's Exhibit 1 or otherwise during the suppression hearing (nor was [a]ppellant charged with that punishment enhancement in the information) and therefore, it is reasonable to infer from the evidence presented before the trial court that [a]ppellant's last drink would have been before he left the bar in Dallas, and certainly before he crashed into the telephone pole in McKinney. All the while, the alcohol continued to metabolize in [a]ppellant's blood stream—an "essential" factor for the Supreme Court's decision in *Schmerber*, and recognized by the *McNeely* Court as a factor that "may support a finding of exigency in a specific case."

(citations to record omitted). The State does not describe, and the record does not show, the distance between the bar appellant purportedly visited and the accident scene described above or the time required to travel that distance.

[5] The State's appellate brief was filed in this Court on March 31, 2014. In a supplemental letter brief filed in this Court on October 6, 2014, the State acknowledges that subsequent to the filing of its initial appellate brief, the intermediate appellate courts of Texas have issued numerous

The record shows that in the case before us, appellant was placed under arrest after he arrived at the hospital and he objected to a blood draw at that time. Therefore, we cannot agree with appellant's position that a hypothetical scenario in which Hoya begins the warrant application process immediately upon leaving the accident scene at 4:17 a.m. is consistent with the facts of this case. Additionally, we disagree with the State's assertion that appellant "assumes facts not in evidence" respecting Castillo's availability to go to the hospital and remain there with appellant. The record shows (1) Hoya was asked on cross-examination whether Castillo "could have gone to the hospital" and Hoya replied, "Sure" and (2) there is no evidence as to what shift Castillo was working that evening or that, in the event he was nearing the expiration of his shift, his waiting for a replacement officer at the hospital would have affected the amount of time required to obtain a warrant. Further, Hoya testified that calling a colleague to execute a warrant for him at the hospital once the judge signs it is "a possibility" and something he "can" do.

Based on the record, officers Hoya and Castillo could have jointly participated in securing and executing a warrant in this case as follows: (1) Hoya arrives at the accident scene at 3:46 a.m.; (2) Hoya and Castillo leave the accident scene at 4:17 a.m. and arrive at the hospital twenty-five minutes later, at 4:42 a.m.; (3) appellant is arrested and Hoya begins the warrant application process while Castillo remains at the hospital; (4) one hour later, at 5:42 a.m., Hoya obtains a search warrant and calls Castillo at the hospital to inform him that the warrant can be executed or, alternatively, heads to the hospital to execute the warrant himself.

Although the State argues that the facts of this case are like those in *Schmerber*, the Court in *McNeely* observed that much technological advancement has occurred since *Schmerber* was

opinions "interpreting and applying [*McNeely*'s] holding regarding warrantless blood draws in driving while intoxicated cases," including some requiring exclusion of a suspect's mandatory blood sample. The State asserts "many of those cases are distinguishable from the facts before this Court."

–19–

decided in 1966. *See McNeely*, 133 S.Ct. at 1561–62; *see also Weems v. State*, 434 S.W.3d 655, 666 (Tex. App.—San Antonio 2014, pet. granted). The record shows Hoya had access to technology that enabled him to prepare a warrant application remotely using a form document. *See McNeely*, 133 S.Ct. at 1561–62. Such technology is "relevant to an assessment of exigency." *Id*. at 1563.

Further, to the extent the State's argument can be construed to assert that the time spent conducting the accident investigation in this case provided exigent circumstances, "[t]here is no per se rule that the time an officer takes conducting an accident investigation in a suspected DWI case will provide exigent circumstances authorizing a warrantless blood draw." *Cole*, 2014 WL 7183859, at *6 (citing *Douds v. State*, 434 S.W.3d 842, 851 (Tex. App.—Houston [14th Dist.] 2014, pet. granted)). "[T]he focus of exigent circumstances analysis in this context is not on the delay attendant to an investigation, . . . but on the delay necessary to obtain a warrant." *Douds*, 434 S.W.3d at 853. The State "should be responsible for asking officers who handle accidents to explain the demands of a particular investigation that made it impractical for police to obtain a warrant before any blood alcohol evidence dissipated." *Id*. at 854. In the case before us, the record does not demonstrate that the accident investigation described above gave rise to any such demands.

Additionally, pursuant to *McNeely*, the relevant factors in determining whether a warrantless search is reasonable include "the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence." *McNeely*, 133 S.Ct. at 1568. That factor "will no doubt vary depending upon the circumstances in the case." *Id*. "[I]n order to establish a plausible justification for an exigent circumstances exception to the warrant requirement, the State ha[s] the burden to show facts and circumstances beyond the passage of time and the resulting dissipation of alcohol in the bloodstream." *Douds*, 434 S.W.3d at 851.

–20–

The trial court's findings of fact and conclusions of law in this case do not specifically address preservation of "the opportunity to obtain reliable evidence." *See McNeely*, 133 S. Ct. at 1568. Nor does the record before us contain any evidence that the extra time that would necessarily have been expended to obtain a warrant in this case threatened that opportunity. *See Douds*, 434 S.W.3d at 856 (although it was "possible" officer may have made judgment that taking time necessary to secure warrant after time spent investigating scene of the accident would have delayed blood draw and "threatened the destruction" of usable evidence of defendant's blood alcohol concentration, officer did not testify to either that judgment or its factual basis and thus court of appeals had "no facts from which to conclude that a reasonable officer would have made such a judgment"); *see also Gore v. State*, No. 01-13-00608-CV, 2014 WL 5896311, at *14 (Tex. App.—Houston [1st Dist.] Nov. 13, 2014, pet. filed) (reversing denial of defendant's motion to suppress in DWI case based in part on lack of evidence that any further delay in order to secure warrant would have threatened destruction of evidence); *Weems*, 434 S.W.3d at 666 (same); *Flores v. State*, No. 04-13-00754-CR, 2014 WL 7183481, at *2 (Tex. App.—San Antonio, Dec. 14, 2014, no pet.) (same); *cf. Cole*, 2014 WL 7183859, at *9 ("*McNeely* confirmed that the State must show that the time necessary to obtain a warrant under the circumstances threatened the destruction of the blood evidence"); *Leal v. State*, No. 14-13-00208-CV, 2014 WL 5898299, at *5 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014, no pet.) (reversing trial court's denial of DWI defendant's motion to suppress because, although State argued threat of destruction of evidence existed, "[t]he findings that can be implied on this record do not support the conclusion that the delay necessary to obtain a warrant threatened the imminent destruction of the evidence of appellant's blood alcohol content"). On this record, we conclude the evidence before the trial court did not support a conclusion that under the totality of the circumstances, the warrantless blood draw in this case was justified by the exigent

–21–

circumstances exception to the Fourth Amendment. *See Gore*, 2014 WL 5896311, at \*14; *Douds*, 434 S.W.3d at 856; *Weems*, 434 S.W.3d at 666; *Flores*, 2014 WL 7183481, at \*2.

We decide in favor of appellant on his first issue.

### 3. Warrantless Search Pursuant to Section 724.012(b)

In appellant's second issue, he contends the results of his blood test should have been excluded at trial because "[t]he taking of [his] blood without a warrant under Chapter 724 of the Texas Transportation Code was a violation of [his] Fourth Amendment rights." In his argument pertaining to that issue, appellant asserts in part (1) "[s]ection 724.012 authorizes this 'compelled physical intrusion,' the involuntary blood draw, without any recognized warrant exception" and (2) "[t]he United States Supreme Court, in its decision in *McNeely*, has effectively ruled that § 724.012 of the Texas Transportation Code is unconstitutional based on the Fourth Amendment of the U.S. Constitution." Additionally, in his reply brief in this Court, appellant asserts in part that section 724.012 (1) "must be subject to the Fourth Amendment, and is not simply a way to circumvent defendant's rights against unreasonable searches and seizures" and (2) "does not simply allow the officer to draw [a]ppellant's blood without first at least attempting to get a warrant."

The State responds in part that Chapter 724 is "constitutional" based on a balancing of interests. According to the State, (1) "[w]hen reviewing a law or regulation that provides for a warrantless search or seizure under the Fourth Amendment, the test is simply whether that search or seizure is reasonable"; (2) "[i]n determining whether a warrantless search or seizure is reasonable, the intrusion on an individual's private interest must be balanced against the legitimate government interests"; and (3) "Chapter 724 is constitutional because the Legislature acted reasonably in constructing a statute that serves to protect our public roadways from drunk drivers by authorizing warrantless blood draws in only three limited, but serious, circumstances."

–22–

Further, the State urges warrantless blood testing under the transportation code falls within a recognized exception to the warrant requirement. Specifically, according to the State,

> Appellant's blood draw was constitutional under the narrowly tailored Section 724.012 of the Texas Transportation Code, which codifies a well-settled exception to the Fourth Amendment warrant requirement on the basis of consent. Upon one of three limited, but serious, circumstances under this statute, an arrestee's consent becomes irrevocable, as was the case for [a]ppellant here.

Additionally, the State contends (1) "[i]n no part of the *McNeely* opinion did the Supreme Court render implied consent statutes unconstitutional, and the case should not now be expanded beyond the narrow scope of its holding" and (2) Hoya "relied in good faith" on section 724.012.

As to the State's arguments that the search in question was constitutionally valid based on a balancing of interests and "irrevocable" consent pursuant to the transportation code, the court of criminal appeals considered and rejected those same arguments in *Villarreal*. *Villarreal*, 2014 WL 6734178, at *16–17, 20–21. Therefore, we reject those arguments.[6] *See id.*; *Lloyd*, 2014 WL 7249747, at *3.

Further, as to the State's argument that Hoya "relied in good faith" on section 724.012, the State cites no authority respecting "good faith" reliance and does not otherwise explain its position. *See* TEX. R. APP. P. 38.1(i). Moreover, to the extent the State's argument can be construed to assert a good-faith exception to the exclusionary rule, the Fourth Court of Appeals in San Antonio recently addressed a similar argument in a DWI case involving a warrantless blood draw and stated in part as follows:

---

[6] Appellant's second issue as stated by him addresses only whether the "taking of [his] blood without a warrant under Chapter 724" was "a violation of [his] Fourth Amendment rights." That is the issue decided by this Court in the analysis above and we need proceed no further in order to dispose of appellant's second issue as stated by him. As described above, appellant's argument pertaining to his second issue includes an assertion that section 724.012 is "unconstitutional" because it "authorizes this 'compelled physical intrusion,' the involuntary blood draw, without any recognized warrant exception." To the extent appellant's arguments pertaining to his second issue can be construed as asserting a challenge to the constitutionality of section 724.012, it is unnecessary for this Court to decide the issue of constitutionality to resolve this appeal and we therefore decline to do so. *See Villarreal*, 2014 WL 6734178, at *20 (declining to decide constitutionality of section 724.012 because determination that defendant's Fourth Amendment rights were violated when his blood was drawn without a warrant in light of his refusal to submit to the taking of a specimen made any further statutory analysis "of whether the mandatory-blood-draw law itself purports to authorize such a warrantless search" unnecessary to resolve Fourth Amendment complaint asserted by defendant); *Leal*, 2014 WL 5898299, at *4 n.3 (same); *cf. Gore*, 2014 WL 5896311, at *6–8 (concluding section 724.012(b) is not facially unconstitutional because it does not mandate a blood draw without a warrant, but may be unconstitutional as applied to a defendant whose blood is drawn without a warrant).

> Under the federal exclusionary rule, if a law enforcement officer relies in good faith on a statute authorizing his warrantless search and the statute is later determined to be unconstitutional, the exclusionary rule does not apply. . . . [W]e note that there is no such good faith exception found in Texas's exclusionary rule—and Texas can provide more protection to a suspect than federal law. Article 38.23 [of the Texas Code of Criminal Procedure] provides for an exception to the exclusionary rule only when an officer relies in good faith upon a warrant issued by a neutral magistrate based on probable cause. It says nothing about an officer's reliance in good faith on a statute. Therefore, we hold that the exclusionary rule applies in this case.

*Weems*, 434 S.W.3d at 666–67 (citations omitted); *see Burks v. State*, No. 02–13–00560–CR, 2015 WL 115964, at *3 (Tex. App.—Fort Worth Jan. 8, 2015, no pet.); *see also Douds,* 434 S.W.3d at 861–62 ("The Court of Criminal Appeals has previously rejected an effort to broaden the good-faith exception using federal precedent, and it has refused to adopt federal exceptions inconsistent with the text of our statutory exclusionary rule."); *Cole*, 2014 WL 7183859, at *12 (same) (J. Moseley, concurring). Because there was no warrant in this case, we conclude the "good faith" exception to the exclusionary rule is inapplicable. *Douds,* 434 S.W.3d at 861–62; *Weems*, 434 S.W.3d at 666–67; *Burks*, 2015 WL 115964, at *3; *Cole*, 2014 WL 7183859, at *12 (J. Moseley, concurring).

We decide in favor of appellant on his second issue.

### III. HARM ANALYSIS

Having concluded the trial court erred, we must determine whether the error harmed appellant. *See Packer v. State*, 442 S.W.3d 375, 379 (Tex. App.—Dallas, 2011, no pet.). "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, [we] must reverse [the] judgment of conviction or punishment unless [we] determine[ ] beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

Because the State did not meet its burden to show that the warrantless blood draw in this case was reasonable under the Fourth Amendment, appellant's motion to suppress should have

been granted. After the trial court denied appellant's motion to suppress, appellant decided to plead guilty. On this record, we cannot determine beyond a reasonable doubt that the trial court's constitutional error of failure to grant appellant's motion to suppress did not contribute in some measure to appellant's decision to plead guilty and thus to his conviction. *Id.*; *see Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2009); *McKenna v. State*, 780 S.W.2d 797, 799–800 (Tex. Crim. App. 1989); *Packer*, 442 S.W.3d at 379; *Gore*, 201444 WL 5896311, at *15; *Flores*, 2014 WL 7183481, at *2; *cf. McNeil v. State*, 443 S.W.3d 295, 303–04 (Tex. App.—San Antonio 2014, pet. filed) (stating that while appellate court does not "believe" traditional harm analysis is required for reversal in DWI cases where defendant pleads guilty after denial of motion to suppress, if such analysis is required, harm standard of rule 44.2(a) was met).

## IV. CONCLUSION

We decide in favor of appellant on his three issues. The trial court's judgment is reversed and this case is remanded for further proceedings consistent with this opinion.

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
131349F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK J. BOWMAN, Appellant

No. 05-13-01349-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 5, Collin County, Texas
Trial Court Cause No. 005-87830-2012.
Opinion delivered by Justice Lang, Justices Bridges and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 10th day of February, 2015.